IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF IOWA

IN RE:                              )
                                    )    Chapter 7
MARK E. WESSELS                     )
ANGELA K. WESSELS                   )    Bankruptcy No. 04-00599
                                    )
    Debtors.                        )

**ORDER RE U.S. TRUSTEE'S MOTION TO DISMISS
UNDER 11 U.S.C. § 707(b)**

This matter came before the undersigned on May 27, 2004 pursuant to assignment. Debtors Mark and Angela Wessels were represented by attorney Fran Henkels. Ms. Wessels was also present. John Schmillen appeared on behalf of the U.S. Trustee. After hearing evidence and arguments of counsel, the Court took the matter under advisement. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A).

**STATEMENT OF THE CASE**

The U.S. Trustee seeks dismissal of Debtors' Chapter 7 case for substantial abuse under § 707(b). He asserts Debtors have the ability to pay unsecured creditors at least 35% of their claims under a Chapter 13 analysis. Debtors resist dismissal.

**FINDINGS OF FACT**

Debtors' original Schedule I lists combined monthly income of $4,995.06. At the hearing, Debtor Angela Wessels testified that she is no longer receiving child support payments of $148 per month, reducing Debtors' monthly income to $4,847.06.

Debtors have prepared three versions of Schedule J listing current expenditures. The original Schedule J lists total monthly expenses of $5,088. In response to the U.S. Trustee's Motion to Dismiss, Debtors revised Schedule J to show total expenses of $5,471.55. The day before the hearing, Debtors faxed U.S. Trustee another revision, showing total expenses of $5,623.90. These versions are included in U.S. Trustee's Exhibit 2.

Through the revisions, Debtors reduced their claimed expense for cable TV from $114 to $50 per month. Medical and dental expenses increased from $150 to $250. Also included in the final revision of Schedule J is $50.00 per month for "Angela's cont. education". Debtors added costs from a postpetition vehicle purchase, including $347.55 monthly installment payments and $102.35 per month for insurance. Debtors purchased a vehicle to replace their 1987 Chevy S10 because the bed of the truck rusted off. The new 1997 Chevy truck was financed with a loan of $11,500 at 7.2% interest payable over 36 months.

The U.S. Trustee has identified several monthly payments listed as expenses which are suspect. These include a payment to Gateway of $85 per month. This is for a debt secured by a laptop computer and a camera. Debtor Angela Wessels testified that she uses the laptop when she takes classes from Loras College to fulfill her continuing education requirements related to her teaching license. The college requires the use of a computer for homework to be done on a blackboard by computer and for lectures available on the computer. Debtor testified the laptop cost approximately $1,400, which was less than a similar computer offered by the College. The Gateway debt will be paid off after 9 more monthly payments. Debtors note that their son will begin college at that time and they will have additional educational expenses for him.

Besides the recently purchased 1997 Chevy truck, Debtors have a 1999 Grand Prix. In their schedules, Debtors state the value of the car is $6,600. Ms. Wessels testified that they were told by a car dealership postpetition that it has a value of $8,600. An auto payment listed on Schedule J is $526.00. Another payment of $581.00 is listed with the same creditor, Upholsterer's Credit Union. From Debtors' Schedule D and Statement of Intention, it appears the $581 payment is for loans also secured by the "1999 Grand Prix and cross collateralized." Debtors have recently filed four reaffirmation agreements with Upholsterer's Credit Union covering a total balance due of $11,160.93, with total monthly payments of $1,047.37. These four agreements appear to relate to the same loans that Debtors disclose as having monthly payments of $526 and $581 on Schedule J, or a total of $1,107 per month. From the Court's calculations, three out of four of these reaffirmed debts will be paid off within a year.

Ms. Wessels testified that the Upholsterer's Credit Union has been pretty lenient with Debtors. They have been paying these debts as best they can. The amounts listed in Schedule J are accelerated amounts. Mrs. Wessels testified that Upholster's Credit Union is tied in with Mr. Wessels employment at Flexsteel, a furniture manufacturer.

Ms. Wessels testified that her license to teach will be in jeopardy if she defaults in her student loan payments. Schedule F lists three unsecured student loan creditors with total claims of $15,894. Schedule J shows a monthly payment for student loans of $235. Ms. Wessels believes that if she does not continue to pay $235 per month on her student loans, she will be in default and the Board of Education can rescind her license to teach. She testified that she is not eligible to get deferments on these loans.

To maintain her teacher's license, Ms. Wessels is required to take six credits of continuing education classes per year. This costs Debtors $385 per credit. Debtors estimate that this amounts to $50 per month annually, which is reflected in the most recently revised Schedule J. Ms. Wessel has used student loans for these required classes. She testified that she could not continue to do so if she fails to continue to pay the full monthly payment for her student loans.

U.S. Trustee asserts that Debtors' student loan debt should be treated the same as other unsecured creditors. During a Chapter 13 plan, student loan creditors receive their pro rata share and may collect the remainder of this nondischargeable debt after the end of the plan. U.S. Trustee argues that modifying a student loan payment over the life of a Chapter 13 plan should not constitute a default for which Ms. Wessels teaching license would be in jeopardy.

U.S. Trustee next asserts that the Credit Union is only entitled to payments up to the value of its collateral. Thus, payments on loans secured by the 1999 Grand Prix need only total the value of the car, or $8,600. Payments scheduled by Debtors would exceed this amount.

Debtors argue that the totality of the circumstances supports their preference to receive a Chapter 7 discharge. They accumulated unsecured debt during a time when Mr. Wessels was unemployed. They do not live a lavish lifestyle. Their

Chapter 7 petition was not filed in bad faith.  Debtors request the option of converting to Chapter 13 if necessary to avoid dismissal under § 707(b).

## CONCLUSIONS OF LAW

Section 707(b) of the Bankruptcy Code provides the Court may dismiss a case filed by a Chapter 7 debtor whose debts are primarily consumer debts if it finds that the granting of relief would be a substantial abuse of the provisions of Chapter 7.  In re Taylor, 212 F.3d 395, 396 (8th Cir. 2000); 11 U.S.C. § 707(b). "Substantial abuse" is not a defined term.  In the Eighth Circuit, "[a] Chapter 7 debtor's ability to fund a Chapter 13 plan 'is the primary factor to be considered in determining whether granting relief would be substantial abuse.'"  In re Koch, 109 F.3d 1285, 1288 (8th Cir. 1997).

For § 707(b) purposes, ability to pay creditors is measured by evaluating Debtors' financial condition in a hypothetical Chapter 13 proceeding.  Koch, 109 F.3d at 1288. Confirmation of a Chapter 13 plan requires, if an objection to confirmation is advanced, that the plan provide that all of the debtors' projected disposable income to be received during a three-year plan will be applied to plan payments.  11 U.S.C. § 1325(b)(1)(B).  "Disposable income" is defined as that which is not reasonably necessary to be expended for the maintenance or support of the debtor or a dependent of the debtor.  11 U.S.C. § 1325(b)(2)(A).  Evaluating Debtors' ability to fund a Chapter 13 plan necessitates a review of Debtor's disposable income.  See generally In re Butler, 277 B.R. 917, 920-21 (Bankr. N.D. Iowa 2002).

The Bankruptcy Code requires a meaningful and realistic budget, accompanied by the devotion of most of the debtor's surplus income to repay creditors.  In re Downin, 284 B.R. 909, 912 (Bankr. N.D. Iowa 2002).  Chapter 13 debtors are not required to live as paupers; neither are they allowed to continue an extravagant lifestyle at the expense of creditors. Butler, 277 B.R. at 920.  Courts apply § 1325(b) to allow debtors to maintain a reasonable lifestyle while simultaneously insuring they make a serious effort to pay creditors by eliminating unnecessary and unreasonable expenses.  Downin, 284 B.R. at 912.

> Some expenditures are clearly essential, or
> nondiscretionary, such as reasonable amounts

4

> budgeted for food, clothing and shelter. Debtors
> are also allowed some latitude regarding
> discretionary spending for items such as recreation,
> clubs, entertainment, newspapers, charitable
> contributions and other expenses. The proper
> methodology is to aggregate all expenses projected
> by the debtor which are somewhat more discretionary
> in nature, and any excessive amounts in the
> relatively nondiscretionary line items such as food,
> utilities, housing, and health expenses, to quantify
> a sum which, for lack of a better term, will be
> called "discretionary spending."

Id. at 912-913 (citations omitted). To determine whether any essential or nondiscretionary expenses are excessive, that is, not reasonably necessary for support, and therefore deserving of placement within the discretionary spending category, a court may compare expenses with the IRS Collection Financial Standards. See In re Beckel, 268 B.R. 179, 182 (Bankr. N.D. Iowa 2001).

Some courts consider whether the debtors are attempting to pay one or more creditors through reaffirmation or voluntary repayment while attempting to discharge the remainder in Chapter 7 when making a substantial abuse analysis. In re Attanasio, 218 B.R. 180, 221 (Bankr. N.D. Ala. 1998) (collecting cases). In In re Wilkinson, 168 B.R. 626, 629 (Bankr. N.D. Ohio 1994), the court found substantial abuse existed where the debtor reaffirmed debts to all but one creditor, including a monthly payment of $200 for a boat. In In re Cronk, 124 B.R. 759, 762 (Bankr. N.D. Ill. 1990), the court found substantial abuse where the debtors reaffirmed several debts, including two debts in excess of $20,000 secured by late model vehicles. The court noted that the debtors were "utilizing Chapter 7 to compel their unsecured creditors to finance their late model vehicles. Arguably, this constitutes a 'substantial abuse' of Chapter 7." Id.

Another relevant inquiry is whether the debtors include payments to select creditors in monthly expense figures, resulting in a reduced disposable income figure. Attanasio, 218 B.R. at 223 (collecting cases). For example, in In re Barker, No. 98-01601-C, slip op. at 5-7 (Bankr. N.D. Iowa Nov. 16, 1998), this Court denied confirmation of a Chapter 13 plan and dismissed the case, based in part on the debtor's improper

5

inclusion of debt payments in Schedule J as monthly expenses. Id. at 7.

Debtors argue that Mrs. Wessels must continue to make full monthly payments on her student loans to protect her teaching license under Iowa law. Generally, Chapter 13 plans provide for repayment of student loan creditors pro rata with other unsecured creditors during the life of the plan, with a continuing obligation thereafter based on the nondischargeability of student loans. See, e.g., In re Groves, 39 F.3d 212, 215 (8th Cir. 1994) ("Alternatively, the debtor may treat the student loan obligation as a long term indebtedness under § 1322(b)(5), curing arrearages within a reasonable time and thereafter maintaining regular payments."); 11 U.S.C. § 523(a)(8). The Court notes that the automatic stay arguably protects Mrs. Wessels' teaching license if the fulfillment of some monetary requirement is a prerequisite for license renewal. See In re Duke, 167 B.R. 324, 325 (Bankr. D.R.I. 1994) (finding automatic stay bars drivers license suspension used as collection device in the recovery of claims by motor vehicle accident judgment creditors); In re North, 128 B.R. 592, 601 (Bankr. D. Vt. 1991) (applying automatic stay against suspension of chiropractor's license for nonpayment of taxes); In re Massenzio, 121 B.R. 688, 691 (Bankr. N.D.N.Y. 1990) (applying Chapter 13 automatic stay to suspension of insurance agent's license where the state agency's goal was the enforcement of pre-petition obligations of the debtor).

Debtors' argue in their brief that their wages are exempt and should not be considered in a substantial abuse analysis. The Eighth Circuit has rejected this argument in Taylor, 212 F.3d at 397, holding that exempt income can be included in calculating disposable income under § 707(b). Debtors also assert the Court should consider the totality of the circumstances, including Debtors' good faith, the lack of extravagance in Debtors' expenses and their candor. "Certainly the court may take the petitioner's good faith and unique hardships into consideration under section 707(b)." In re Walton, 866 F.2d 981, 983 (8th Cir. 1989). The substantial abuse inquiry focuses primarily, however, on Debtors' ability to pay. Koch, 109 F.3d at 1288.

6

**ANALYSIS**

Based on the final version of Debtors' Schedule J, U.S. Trustee's analysis estimates Debtors' initial monthly disposable income is $699, increasing to $784 in 9 months after the Gateway secured debt is paid. In a hypothetical 3-year Chapter 13 plan, Debtors could pay unsecured creditors 35.4% of their claims. The Court has also compared Debtors' Schedule J with IRS collection standards. Debtors have housing expenses of $1,531. The standards allow for housing expenses of $1,183. Debtors have transportation expenses of $1,915, including all the debt secured by Debtors' vehicles. The IRS standards allow for approximately $1,130. In just these two categories, Debtors' expenses exceed the standards by $1,133. Over three years, monthly payments of $1,133 would provide $40,788 toward Debtors' unsecured claims of $69,067.23 plus administrative expenses. This calculation does not take into account the more than $800 per month Debtors spend on miscellaneous expenses according to their most recent version of Schedule J. These include amounts listed for medical and dental expenses, recreation, contributions, life insurance, continuing education, daycare, lunches and school expenses, piano lessons and school tuition. The Court believes there is room for substantial belt-tightening in the amounts Debtors budget for these miscellaneous expenses.

Debtors' Statement of Intention shows their intent to reaffirm all secured debts, including Debtors' home mortgage and home equity loans, four loans from Upholsters Credit Union secured by a 1999 Grand Prix, and the Gateway debt for a camera and laptop. Total monthly payment on the Credit Union loans according to reaffirmation agreements Debtors have filed is $1,047.37. The Court finds this is excessive for a loan secured by a 5-year old vehicle. Furthermore, the principal amounts of the loans total $11,160.93, substantially higher than the value of the 1999 Grand Prix, of between $6600 and $8600. Debtors' intent to pay the Credit Union in full, in a fairly short period of time and including the undersecured portion of the debt, harms unsecured creditors.

As a secured creditor in a hypothetical Chapter 13 case, the Credit Union would be entitled to payment of only the secured portion of its claim over three years. The U.S. Trustee's analysis estimates that Debtors could pay the debt on both the 1999 Grand Prix and the recently-purchased 1997 Chevy truck with combined monthly payments of $630 over three

years with 8% interest.  This alone would free up $774 per month for payments on unsecured debt.

In this case, Debtors make a comfortable living.  They have miscellaneous expenses, however, which should be reduced.  Debtors have filed reaffirmation agreements and schedules which evidence that they are overpaying debt to Upholsterer's Credit Union secured by their 1999 Grand Prix.  This reduces the amount of disposable income available in a hypothetical Chapter 13 case to the detriment of unsecured creditors.  Based on the foregoing, the Court concludes that the U.S. Trustee has met his burden of proving that granting Debtors Chapter 7 relief would be a substantial abuse of the provisions of the Bankruptcy Code.  This case should be dismissed under § 707(b).  Debtors will be given the opportunity to voluntarily convert to Chapter 13 prior to entry of dismissal.

**WHEREFORE**, the U.S. Trustee's Motion to Dismiss is GRANTED.

**FURTHER**, Debtors shall have until July 2, 2004 within which to elect to convert to Chapter 13.

**FURTHER**, if Debtors fail to convert to Chapter 13 by that date, this case will be dismissed for substantial abuse without further notice or hearing.

**SO ORDERED** this <u>18th</u> day of June, 2004.

_____
PAUL J. KILBURG
CHIEF BANKRUPTCY JUDGE